Patricia L. SPAULDIN, Appellant–Respondent,

v.

Larry D. SPAULDIN, Respondent–Appellant.

Nos. WD 52242, WD 52255.

Missouri Court of Appeals, Western District.

May 27, 1997.

Edward C. Clausen, Burns H. Davison, III, Carson & Coil, Jefferson City, for appellant.

Gary L. Stamper, Walther, Antel & Stamper, Columbia, for respondent.

Before BRECKENRIDGE, P.J., and SPINDEN and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Presiding Judge.

Patricia Lou Spauldin (Wife) appeals from the trial court's judgment dissolving her marriage to Larry Dean Spauldin (Husband). Wife contends that the trial court erred in dividing the marital property by: (1) including nonmarital property in its calculations; (2) failing to ascribe a value to certain property distributed to Husband; and (3) using incorrect values for household goods and marital real estate. She also appeals from the trial court's order awarding all of the marital real estate to Husband and terminating her maintenance award upon the partial payment by Husband of the money judgment in favor of Wife. In addition, Husband cross-appeals, claiming that the trial court incorrectly set the amount of interest to be paid to Wife on the money judgment. The appeal and cross-appeal are dismissed.

Husband and Wife were married on March 9, 1957. After thirty-seven years of marriage, Wife filed her petition for dissolution of marriage. A trial was held in the Circuit Court of Boone County on April 21, 1995. Additional evidence was presented at hearings on August 7 and September 25, 1995, on Husband's motion to reopen evidence and on Wife's motion for temporary restraining order with respect to property and for an accounting, respectively.

During the three hearings, numerous exhibits were admitted into evidence setting forth the parties' property by category and the parties' competing schemes of distribution. Both parties offered exhibits describing the marital real property, which consisted of ten tracts owned free and clear of any debt. The properties are located in Boone, Audrain, and Monroe counties. Approximately 221 acres of the marital real property were involved in the federal Conservation Reserve Program (CRP) established to improve farm land, as administered by the Agricultural Stabilization and Conservation Service (ASCS). The parties agreed with ASCS to set aside a certain number of tillable acres for a period of ten years in exchange for annual payments from ASCS. Although the actual contract with ASCS was not offered into evidence by either party, Husband testified that he expected to receive over $14,000 from ASCS, the same amount received in previous years under the CRP contract.

Both parties also offered exhibits detailing the marital personal property. Wife's Exhibit 9, labelled "Miscellaneous Property To Be

Set Aside to Larry Spauldin," described several items of property, including a Kansas City Life Insurance Policy with a cash surrender value of $5,000, thirty-seven shares of John Mansfield [sic] stock, and annual dividends from Boone Electric, Consolidated Electric, Boone County Oil Company and MFA. The record contains no evidence of value for the John Mansville stock or any vested interests in the four cooperatives. Wife testified at trial that, although the insurance and interests in the cooperatives listed on her Exhibit 9 are smaller items, they are a source of income and she wanted this property to be set aside to Husband. She also testified that Husband had taken out the Kansas City Life Insurance policy on his life shortly before they were married, but the premiums on the policy had been paid with marital income since 1957. Husband did not present any evidence concerning these items or include them in his exhibits.

The trial court entered its "Findings and Judgment" on December 19, 1995, dissolving the parties' marriage. In its decree, the trial court awarded all of the parties' real property to Husband and ordered him to pay Wife $368,606 to equalize the division, payable as follows:

> $100,000.00 to be paid within 60 days, an additional $100,000.00 twelve months thereafter, an additional $100,000.00 twelve months thereafter, and the balance of $68,606.00, less adjustments noted below, to be paid twelve months thereafter. All unpaid balances to bear interest at 15% from this date and pre-payment shall be allowed.

In addition, Wife was awarded maintenance of $1,500 per month until Husband paid "at least $200,000.00" of the judgment to equalize the award of the real property.

The trial court divided the personal property by reference to exhibits which delineated the property and assigned it values. Specifically, Wife's Exhibit 5 and Husband's Exhibit 8 were attached to the trial court's decree. The portion of the decree dividing the personal property provided:

> [Husband] awarded farm equipment and crops shown on [Husband's] Exhibit # 7 with value of $43,100.00. [Wife] awarded household goods and furniture as set forth in [Wife's] Exhibit # 5, and [Husband] awarded remaining household goods. [Wife] awarded all other property shown on [Husband's] Exhibit 8 with value of $122,505.00. [Husband] awarded motor vehicles and household goods in his possession as set forth in [Husband's] Exhibit 8 with value of $13,695.00. . . .

The court also awarded "those crops now growing" from the 1995 farming season to Husband as his "separate marital property."

Wife complains on appeal that the trial court did not place a value on the 1995 crops or the proceeds from the CRP contract, and that the court did not mention the thirty-seven shares of John Mansville stock or the Kansas City Life Insurance policy. A careful comparison of the decree and the record before the trial court reveals that there is no mention of the 1995 proceeds from the CRP contract, the John Mansville stock or Husband's Kansas City Life Insurance policy anywhere within the four corners of the decree. Although the decree awarded Husband the "remaining household goods," this award cannot reasonably include securities, a life insurance policy or CRP income because these intangibles do not fall within the ordinary meaning of "household goods." In addition, the decree fails to acknowledge the existence of the parties' interests in Boone Electric, Consolidated Electric, Boone County Oil Company and MFA, the four cooperatives listed on Wife's Exhibit 9.

The evidence at trial was sufficient to place the disposition of these items of marital property in issue. The Kansas City Life Insurance policy was purchased by Husband shortly before the marriage, but it is reasonable to infer that the cash value of $5,000 was attributable to the thirty-eight years of premiums paid with marital funds. Although there was no evidence of value as to the thirty-seven shares of John Mansville stock or the parties' interest in the four cooperatives, which paid dividends, the trial court had evidence before it of the existence of this property and Wife's proposal to set it aside to Husband. Further, Husband testified that the $14,000 annual payment under the CRP contract was expected in October, 1995,

well before the parties' marriage was dissolved.

■ The trial court's decree was not final because it did not distribute all of the property identified as marital property nor did it determine that the property is nonmarital or nonexistent. *Spence,* 922 S.W.2d at 442; *Zimmer,* 826 S.W.2d at 906.

[W]hen undistributed property is discovered before the time for appeal has run, the appellate court, when presented with an appeal raising the issue of undistributed property, must dismiss the appeal because the trial court has not exhausted its jurisdiction and has not rendered a final judgment from which an appeal can be taken.

*Meltzer v. Meltzer,* 775 S.W.2d 120, 120–21 (Mo. banc 1989) (quoting *State ex rel. McClintock v. Black,* 608 S.W.2d 405 (Mo. banc 1980)). "The effect of this dismissal is to recognize the jurisdiction of the trial court to enter a new judgment covering the entire case." *Meltzer,* 775 S.W.2d at 121. Either party will then have the right to appeal the trial court's new decree. *Spence,* 922 S.W.2d at 443.

■ This court concludes that the judgment rendered by the trial court is not a final judgment for purposes of appeal because the dissolution decree does not dispose of all the parties' marital property as required by § 452.330, RSMo.1994.[1] The property not distributed consists of thirty-seven shares of John Mansville stock, a Kansas City Life Insurance policy with a cash value of $5,000, the 1995 proceeds from the parties' CRP contract, and the parties' interest in four cooperatives.

■ Although neither party raised the issue of finality before the trial court or before this court on appeal, "[t]he finality of a judgment is a jurisdictional prerequisite and it is the duty of a court sua sponte to determine its jurisdiction, and if a judgment is not final a court must dismiss the appeal." *Spence v. Spence,* 922 S.W.2d 442 (Mo.App. 1996). The lack of a final judgment leaves this court with no alternative other than to dismiss both parties' appeals. *Zimmer v. Zimmer,* 826 S.W.2d 904, 905 (Mo.App.1992);

*Wagner v. Wagner,* 823 S.W.2d 523, 526 (Mo. App.1992).

Because there is the potential for an appeal after remand, the trial court may wish to consider several issues raised by the parties in this court. First, there was a specific finding in the decree that the court was valuing the marital real estate "as determined by the appraisals made by Jack Blaylock." With respect to Tract 1, which is 171–175 acres at Roberts Lane, Mr. Blaylock's assessed value was $180,000, as per his written appraisal admitted into evidence as Wife's Exhibit 10. Nevertheless, the court utilized the figure of $175,392 for the appraised value of Track 1. In so doing, it is likely that the trial court was misled by Husband's Exhibit 1, which misstates the appraised value of Track 1 as $175,392.

Second, the trial court awarded Husband "motor vehicles and household goods in his possession as set forth in [Husband's] Exhibit # 8, with a value of $13,695.00." Husband's Exhibit 8, lists the values for motor vehicles at $10,320 and household goods in Husband's possession at $3,375. When stating the value of the household goods, Exhibit 8 references Husband's Exhibit 4. On Exhibit 4, the total value for household goods in Husband's possession is $6,970, not the $3,375 figure used by Husband on Exhibit 8. Due to this error, Husband's Exhibit 8, as relied upon by the trial court in its division of property, undervalued the household goods awarded to Husband by $3,595.

Third, Husband was awarded the 1995 crops "as his separate marital property," but there was no evidence in the record as to the value of these crops. Although the court was provided with evidence regarding the number of tillable acres and the nature of the planted crops, neither party presented evidence concerning the actual value of the crops.

■ "Annual crops raised by yearly labor and cultivation are fructus industriales, and are to be regarded as personal chattels, independent and distinct from the land, capable of a sale without regard to whether grow-

---

1. All statutory citations refer to the Revised Missouri Statutes 1994, unless otherwise noted.

ing or matured." *Doyle v. Doyle,* 577 S.W.2d 64, 68 (Mo.App.1979) (quoting *Swafford v. Spratt,* 93 Mo.App. 631, 67 S.W. 701, 702 (1902)). Therefore, growing crops are an asset to be divided in a dissolution of marriage, even when they are growing on marital property. *Carter v. Carter,* 940 S.W.2d 12, 17 (Mo.App.1997).

▮ "Although the trial court need no longer assign values to the marital property, evidence from which the value of the marital property can be determined must appear." *Frame v. Frame,* 696 S.W.2d 332, 336 (Mo. App.1985). *See also Bidstrup v. Bidstrup,* 750 S.W.2d 712, 713 (Mo.App.1988). Evidence permitting a fair and accurate valuation of the growing crops is required before a just division of the property can be achieved, and a meaningful review of that division can be undertaken on appeal. *Bidstrup,* 750 S.W.2d at 713–14.

Fourth, Husband and Wife agreed that Wife received two inheritances totaling approximately $40,000. Wife deposited her inheritances into an account she maintained for her Avon business. She testified that the inheritance was never deposited in a jointly-titled account, and that her separate funds from the inheritances were used to purchase a 1987 GMC van, WalMart stock, the ACM Government Income Fund, the Putnam Master Income Trust and the Ozark National and Pioneer Life Insurance policies. Husband *stipulated in the parties'* Pretrial Settlement Conference Stipulation that Wife owned separate property not subject to division by the court, although the specific property was not delineated.

In its decree, the trial court did not refer to Wife's claim of separate property and treated all the property as marital property. While Wife did not request the trial court to make findings on her claim of separate property, any gratuitous findings by the trial court would aid review of this issue on appeal.

2. In *Lawry,* the appellate court dismissed an appeal from a dissolution action because the trial court's decree of dissolution was not final due to the court's failure to distribute all of the marital property. 854 S.W.2d at 844. The *Lawry* court

In addition, as noted above, the trial court ordered Husband to pay fifteen percent interest on the cash award to Wife to equalize the award of the parties' real estate. It is suggested that the trial court review its order, in light of § 408.040.1, setting the statutory rate of interest at nine percent per annum, and the holding of *In re Marriage of Hollander,* 615 S.W.2d 492, 493 (Mo.App. 1981), that awarding interest in an amount greater than that allowed by statute is reversible error.

▮ Finally, § 452.335 requires a decree to designate whether a maintenance award is modifiable or nonmodifiable. *Whitworth v. Whitworth,* 878 S.W.2d 479, 485 (Mo.App. 1994); *Lawry v. Lawry,* 854 S.W.2d 842, 844 (Mo.App.1993).[2] Upon entry of the final judgment in this case, the trial court should conform its decree to the statute and indicate whether the maintenance award is modifiable or nonmodifiable. *Lawry,* 854 S.W.2d at 844.

The appeal and cross-appeal are dismissed.

All concur.

noted the trial court's error in failing to designate whether the maintenance award was modifiable or nonmodifiable pursuant to § 452.335.3. *Id.*